## DISTRICT COURT OF THE VIRGIN ISLANDS
## DIVISION OF ST. CROIX

_____

|  |  |  |
|---|---|---|
| **UNITED STATES OF AMERICA** | ) | |
| | ) | |
| | ) | |
| | ) | |
| **v.** | ) | **Criminal Action No. 2013–006** |
| | ) | |
| | ) | |
| **JAMAL SMITH,** | ) | |
| | ) | |
| **Defendant.** | ) | |

_____)

**Attorneys:**

**Rhonda Williams-Henry, Esq.,**
St. Croix, U.S.V.I.
     *For the United States*

**Martial A. Webster, Esq.,**
St. Croix, U.S.V.I.
     *For the Defendant*


## MEMORANDUM OPINION AND ORDER

**Lewis, Chief Judge**

THIS MATTER comes before the Court on Defendant's Motion to Suppress (Dkt. Nos. 7, 14), his Memorandum of Law in support thereof (Dkt. Nos. 8, 15),[1] the Government's Opposition thereto (Dkt. No. 17), and the evidence and arguments presented at the suppression

_____

[1] Defendant appears to have filed two identical Motions to Suppress (Dkt. Nos. 7, 14) and two identical supporting Memoranda of Law (Dkt. Nos. 8, 15). The first Motion and Memorandum were filed on March 25, 2013, and the second Motion and Memorandum were filed on March 26, 2013. Throughout this Opinion and Order, the Court will cite to the most recent Motion to Suppress (Dkt. No. 14) and supporting Memorandum (Dkt. No. 15) filed by Defendant.

hearing held before the Court on July 9, 2013. Upon consideration of the foregoing, and for the following reasons, the Court will deny Defendant's Motion.

## I.   BACKGROUND AND EVIDENCE

On February 1, 2013, the Government filed a two-count Indictment in this Court charging Defendant Jamal Smith with (1) possession of a firearm with an obliterated serial number, in violation of 18 U.S.C. §§ 922(k) and 924(a)(1)(B); and (2) possession of marijuana with intent to distribute, in violation of 21 U.S.C. §§ 841(a)(1) and 841(b)(1)(D).  (*See* Indictment, Dkt. No. 1 at 1–2).

On March 26, 2013, Defendant filed the instant Motion to Suppress, seeking to suppress all evidence obtained during a December 1, 2012 encounter with Virgin Islands Police Department ("VIPD") officers, on the grounds that such evidence was seized in violation of Defendant's Fourth and Fifth Amendment rights.  (*See* Dkt. Nos. 14, 15). On April 12, 2013, the Government filed an Opposition to Defendant's Motion. (*See* Dkt. No. 17).

At an evidentiary hearing held on July 9, 2013, the parties presented evidence and argument on Defendant's Motion to Suppress. VIPD Officer Dirk Marshall testified for the Government. Three witnesses testified for the defense: Mr. Darnell Dennery, Mr. Mark Smith, and Defendant Jamal Smith. Based on the testimony and argument presented by each party, two competing narratives emerged of the encounter between Defendant and the VIPD officers, as summarized below.

### A.   The Government's Version of the Encounter

The Government's version of the encounter is based on the testimony of VIPD Officer Dirk Marshall. Officer Marshall's testimony was consistent with the affidavit he produced on

January 25, 2013. (*See* Dkt. No. 15-1). The facts, according to Officer Marshall, can be summarized as follows.

At approximately 8:58 p.m. on the night of December 1, 2012, VIPD Police Officers Dirk Marshall and Omar Henry were driving in an unmarked police sports-utility vehicle ("SUV") near the community center in the Mon Bijou area on St. Croix, United States Virgin Islands. Officer Marshall was the driver, and his partner, Officer Henry, was in the front passenger seat. A red pick-up truck was stopped in the middle of the road, blocking their route. Officer Henry exited the SUV to instruct the driver of the red truck to pull the truck to the side of the road to allow the officers' SUV to pass. The driver of the truck pulled it to the left side of the road and parked in front of Defendant's white car. At that point, the red truck and Defendant's car were parked back-to-back, approximately six to ten feet apart.

Meanwhile, Officer Marshall looked to his left, where Defendant's white Toyota Corolla was parked alongside the officers' SUV, approximately three feet away. The two cars were facing opposite directions, so Officer Marshall was roughly aligned with the rear of Defendant's car. Officer Marshall observed Defendant leaning on the trunk of his car, upon which were several small, plastic, clear "artist cups" filled with a green leafy substance that appeared to be marijuana. Officer Marshall exited the SUV and, as he approached Defendant, he smelled a strong odor of marijuana coming from the car. Officer Marshall asked Defendant if he had anything illegal on his person, and Defendant replied that he had a couple of "dime bags," or small, clear plastic bags of marijuana, in his pocket. When Officer Marshall searched him, he found eight dime bags of marijuana and over $300 in cash in Defendant's pockets.

Officer Marshall then asked if there was anything else illegal in the car. Defendant replied that he had "some weed" in the center console of the car. Officer Marshall then told

Defendant that, "I'm going to make a check of your vehicle," and Defendant responded, "go ahead." According to Officer Marshall, he did not force Defendant to let him search the car, and Officer Marshall's demeanor was calm and casual. Defendant was not handcuffed at the time, and Officer Marshall had not drawn his gun.

In the center console of the car, Officer Marshall found another bag of marijuana. He also saw an opened black bag on the passenger side floor, and some unused artist cups on the passenger seat. He got out of the car, and as he was walking around the car, he shined his flashlight on the rear of the front passenger seat and saw a gun in the seat pouch. The top of the butt of the gun was visible, protruding from the top of the seat pouch, and the outline of the gun was visible through the pouch. Officer Marshall immediately yelled "gun" to his partner, Officer Henry. Upon inspection, the gun was found to be loaded, and had an obliterated serial number.

Officer Marshall asked Defendant if he was a registered firearm owner, and he responded, "no." The officers placed Defendant under arrest, and moved him away from the car. Then, Officer Marshall smelled marijuana coming from the trunk of the car, and told his partner, "I'm still smelling marijuana from there." The officers opened the trunk and noticed a big black bag that was partially open. Within the bag, Officer Marshall could see more marijuana in a "food-saver" bag (a plastic bag that can be sealed using a machine). The officers placed all the evidence on the hood of the car, and called forensic officers to the scene. The marijuana was field-tested, and tested positive for THC.[2]

---

[2] THC, or tetrahydrocannabinol, is the principal psychoactive constituent (or cannabinoid) of the cannabis plant.

**B.      Defendant's Version of the Encounter**

At the evidentiary hearing held on July 9, 2013, the defense also presented its version of the encounter between Defendant and the VIPD officers. In support of Defendant's version of the facts, the defense presented the testimony of three witnesses: Mr. Darnell Dennery, Mr. Mark Smith, and Defendant Jamal Smith.

Mr. Dennery testified that he has known Defendant for "all my life," and that they are good friends. Immediately prior to the encounter, Dennery and his companions were "coolin'" or "chillin'," "like we do every day, in front of my house." Dennery and his friend Isaiah were both seated in the flatbed of Isaiah's red pick-up truck, which was parked in the middle of the road, beside Defendant's car. The police officers told them to pull over; therefore, Isaiah moved from the flatbed to the driver's seat, and drove the truck to the side of the road.

Dennery testified that after Isaiah moved his truck, he and Isaiah remained in or near the truck and observed the encounter between Defendant and the VIPD officers. Officer Marshall came up to Defendant's car, and asked to whom the car belonged; Defendant replied that it was his car. According to Dennery, Officer Marshall then came up to Defendant and tried to put his hand into Defendant's pocket, without asking whether he could search him. Defendant naturally jumped, so Officer Marshall handcuffed Defendant's hands behind his back. Officer Henry was holding his weapon in a downward position. Dennery saw Officer Marshall pick up a baggie from the ground, then place it on the trunk, and then on the hood of the car.

Dennery testified that he saw only a newspaper on the trunk of Defendant's car, but stated that he could not see the entire trunk. On cross-examination, Dennery testified that he could not see or hear everything that happened. Several times, he qualified what he saw with the caveat, "from my angle." Referencing the photograph of the scene introduced as an exhibit,

5

Dennery noted that, from his angle, he could not have seen the passenger side of Defendant's car very clearly, and he could not have seen everything. For example, Dennery said, "I saw stuff on his trunk; I don't know what it was."

The defense's second witness was Defendant's father, Mr. Mark Smith. Mr. Smith heard that his son had been arrested, and therefore walked to the scene of the encounter. When he arrived on the scene, the police officers were searching Defendant's car from the passenger side rear door. At the time, the trunk was closed, and he did not see the officers open the trunk at any time.

For the third witness, the defense called Defendant, Jamal Smith. Defendant denied that he had any marijuana on the trunk. He also testified that he did not give the officers permission to search him or his vehicle.

## II. DISCUSSION

### A.    Applicable Legal Principles

The Fourth Amendment protects individuals from "unreasonable searches and seizures," U.S. Const. amend. IV, and "searches without a warrant are presumptively unreasonable." *United States v. Mathurin*, 561 F.3d 170, 173 (3d Cir. 2009). "However, under the exception to the warrant requirement established in *Terry v. Ohio*, 392 U.S. 1 (1968), the Supreme Court has held that 'police can stop and briefly detain a person for investigative purposes if the officer has a reasonable suspicion supported by articulable facts that criminal activity 'may be afoot,' even if the officer lacks probable cause.'" *Id*. at 173–74 (quoting *United States v. Sokolow*, 490 U.S. 1, 7 (1989)). Such brief investigative stops are "seizures" subject to Fourth Amendment protection. *Johnson v. Campbell*, 332 F.3d 199, 205 (3d Cir. 2003) (citing *Terry*, 392 U.S. at 21).

Reasonable suspicion "is a less demanding standard than probable cause[.]" *Alabama v. White,* 496 U.S. 325, 330 (1990). Because "probable cause means 'a fair probability that contraband or evidence of a crime will be found,' the level of suspicion necessary to justify a *Terry* stop is somewhat lower and can be established with information that is different in quantity or content than that required for probable cause." *United States v. Ramos*, 443 F.3d 304, 308 (3d Cir. 2006) (quoting *White*, 496 U.S. at 330, and citing *Illinois v. Gates,* 462 U.S. 213, 238 (1983)). The police officer must, however, demonstrate that the stop was based on something more than an '"inchoate and unparticularized suspicion or hunch.'" *Sokolow,* 490 U.S. at 7 (quoting *Terry,* 392 U.S. at 27). An officer, therefore, "may only effectuate a *Terry* stop where 'specific and articulable facts, together with all their rational inferences, suggest that the suspect was involved in criminal activity.'" *Ramos*, 443 F.3d at 308 (quoting *United States v. Robertson,* 305 F.3d 164, 168 (3d Cir. 2002)).

In evaluating reasonable suspicion, courts "must consider 'the totality of the circumstances—the whole picture.'" *Sokolow*, 490 U.S. at 8 (quoting *United States v. Cortez*, 449 U.S. 411, 417 (1981)). What is constitutionally "unreasonable" varies with the circumstances, and requires a balancing of the "nature and extent of the governmental interests" that justify the seizure, against the "nature and quality of the intrusion on individual rights" that the seizure imposes. *Terry,* 392 U.S. at 22, 24. In judging the reasonableness of stops, courts examine whether "the facts available to the officer at the moment of the seizure . . . 'warrant a man of reasonable caution in the belief'" that "criminal activity may be afoot." *Id.* at 21–22, 30 (citations omitted).

The constitutionality of a *Terry* stop involves a two-part assessment:

> First, we examine 'whether the officer's action was justified at its inception'—
> that is, whether the stop was supported by reasonable suspicion at the outset. . . .
> Next, we determine whether the manner in which the stop was conducted 'was
> reasonably related in scope to the circumstances which justified the interference
> in the first place.'

*United States v. Johnson*, 592 F.3d 442, 452 (3d Cir. 2010) (quoting *Terry*, 392 U.S. at 19–20).

In considering whether a stop is "'so minimally intrusive as to be justifiable on reasonable

suspicion,'" courts consider the duration of the stop; the law enforcement purposes justifying the

stop; whether the police diligently sought to carry out those purposes given the circumstances;

and alternative means by which the police could have served their purposes. *United States v.

Sharpe,* 470 U.S. 675, 684–87 (1985) (citation omitted). Finally, any evidence obtained as a

result of an unconstitutional seizure "must be suppressed as 'fruit of the poisonous tree.'" *Brown*,

448 F.3d at 244 (quoting *Wong Sun v. United States*, 371 U.S. 471, 487–88 (1963)).[3]

**B.     Analysis**

    **1.     Fourth Amendment Challenge**

Defendant contests the facts presented by the Government at the suppression hearing.

Specifically, Defendant "contends that he never consented to the search of his person or his

vehicle," and that he never made several of the statements attributed to him by Officer Marshall.

(*See* Dkt. No. 15 at 2–3). Defendant argues that his search and seizure were unlawful, because

the *Terry* stop and search were not supported by a reasonable suspicion "that criminal activity

[was] afoot."   (*See id.* at 5 (quoting *Terry*, 392 U.S. at 30)).  In support of this conclusion,

Defendant argues that it is not a crime to possess a firearm in the Virgin Islands. (*See id.* (citing

---

[3] On a motion to suppress under the Fourth Amendment, the defendant carries the burden of
showing that the evidence was seized by an unlawful search.  *See United States v. Blakeney*, 942
F.2d 1001, 1015 (6th Cir. 1991).

*United States v. Ubiles*, 224 F. 3d 213 (3d Cir. 2000)). Defendant further argues that "[t]he law enforcement officer that seized the firearm from defendant said nothing that would indicate that defendant possessed a gun unlawfully (e.g., without registration); that defendant was committing or about to commit a crime or that defendant posed a threat to anyone." (*Id.*). For these reasons, Defendant concludes that the police officers failed to articulate a reasonable suspicion or a reason establishing probable cause for the stop, search, and seizure. (*Id.*). Therefore, Defendant moves for the suppression of any evidence seized. (*Id.*).

In opposition, the Government argues, *inter alia*, that the marijuana found was not improperly seized, and there was probable cause to search Defendant's car.  (*See* Dkt. No. 17 at 2–7). The Government argues that probable cause existed to search Defendant throughout the entire encounter, starting with the officers' initial observation of the plastic cups filled with what appeared to be marijuana. (*Id.* at 3–4). The Government further argues that there was probable cause to search the car because of the smell of marijuana coming from within the car and Defendant's admission that he had marijuana in the car. (*Id.* at 4–7).

Given the conflicting narratives advanced by both parties through their filings, and the evidence and argument presented at the evidentiary hearing, the Court is required to make credibility determinations. Based on the totality of the evidence presented, including the relative plausibility of the competing accounts, the Court credits the account provided by the Government.

Defendant's father, Mark Smith, was not present at the scene for the portion of the encounter material to this determination. By Mr. Smith's own testimony, he came to the scene only after hearing that Defendant, his son, had been arrested. Thus, Mr. Smith's testimony has no bearing on the Court's Fourth Amendment analysis.

As to the remaining defense witnesses—Mr. Dennery and Defendant Smith—the Court finds their testimony unworthy of belief or not otherwise reliable in two critical respects. First, the Court finds implausible and not credible the defense witnesses' statements that the encounter began with Officer Marshall exiting the SUV and then immediately attempting to put his hands in Defendant's pockets for no apparent reason. Because the manner in which the encounter began is central to the Court's evaluation of Defendant's Fourth Amendment challenge, the credibility of the testimony in this respect is of critical importance.

Second, the Court also deems significant Mr. Dennery's acknowledgment that he could not see or hear everything that happened, including what was on the trunk of the car and the exchanges between Officer Marshall and Defendant. Mr. Dennery often qualified his statements as to what he saw with the caveat that he could only testify as to what he could see from his angle. What Officer Marshall claims to have observed on the scene and any communications that he had with Defendant are obviously of critical importance to the Court's analysis.

In contrast, the Court finds the Government's version of the facts, as testified to by Officer Marshall, to be plausible, credible, and complete. The Government presented evidence that, as the officers' SUV was alongside Defendant's car—prior to any contact between the police officers and Defendant—Officer Marshall saw several clear plastic cups, filled with what appeared to be marijuana, on the trunk of Defendant's car. The sight of plastic cups filled with marijuana—in plain view on the trunk of Defendant's vehicle—provided the basis for the officers to possess a "reasonable, articulable suspicion that criminal activity [was] afoot." *See Ramos*, 443 F.3d at 308 (citing *Terry*, 392 U.S. at 27). Therefore, the officers were authorized to conduct a "brief, investigatory search" (or *Terry* stop), consistent with the Fourth Amendment. *See id.* (noting that police officers "may only effectuate a *Terry* stop where 'specific and

articulable facts, together with all their rational inferences, suggest that the suspect was involved in criminal activity'") (quoting *Robertson,* 305 F.3d at 168). Accordingly, the Court finds that the police officers had reasonable suspicion to initiate the *Terry* stop, and the officers' decision to approach the car and investigate further was "justified at its inception." *See Terry,* 392 U.S. at 20.

During the *Terry* stop, the officers' reasonable suspicion ripened into probable cause to search Defendant and his car, and to arrest him. *See United States v. Goode*, 309 F. App'x 651, 654 (3d Cir. 2009) ("When reasonable suspicion surrounding a suspect ripens into probable cause during the course of an investigatory stop, arrest of that suspect is lawful."). When Officer Marshall exited the SUV and approached Defendant's car, Officer Marshall smelled "an overwhelming odor of marijuana" coming from inside Defendant's car. (*Id.*). The marijuana odor detected by Officer Marshall provided probable cause to search the car. *See Ramos*, 443 F.3d at 308 ("It is well settled that the smell of marijuana alone, if articulable and particularized, may establish not merely reasonable suspicion, but probable cause."); *see also United States v. Ushery*, 400 F. App'x 674, 675 (3d Cir. 2010) (holding that probable cause supported the search of the defendant's car when police offers smelled the odor of marijuana coming from inside the car). Given this probable cause, the officers were permitted to search the entire vehicle. *See United States v. Ross*, 456 U.S. 798, 825 (1982) ("If probable cause justifies the search of a lawfully stopped vehicle, it justifies the search of every part of the vehicle and its contents that may conceal the object of the search."); *United States v. Cole*, Crim. No. 2009–029, 2010 WL 724382 at *3 (D.V.I. Mar. 1, 2010) ("Once probable cause to search the car existed, it provided the basis for searching the entire vehicle.").

Several other aspects of the *Terry* stop provided the officers probable cause to search Defendant and his car, and to arrest him. Defendant admitted that he had marijuana in his pocket, and the resulting search yielded eight small bags of marijuana. Defendant further admitted that he had marijuana in the center console of the car, and the officers' subsequent search revealed marijuana. Officer Marshall testified that he saw a black handgun, in plain view, in the front passenger seat pouch. When asked, Defendant admitted that he was not a registered firearm owner. In view of this admission, the police officers reasonably concluded that Defendant's possession of the gun was unlawful. V.I. CODE ANN. tit. 14, § 2253(a) ("Whoever, unless otherwise authorized by law, has, possesses, bears, transports or carries either, actually or constructively, openly or concealed any firearm, as defined in Title 23, section 451(d) of this code, loaded or unloaded, may be arrested without a warrant"). In addition, the gun's serial number was obliterated. This was further evidence of a violation of both federal and local law. *See* 18 U.S.C. § 922(k) (barring the possession of any firearm with an obliterated serial number); 23 V.I.C. § 481(a)–(b) (prohibiting the possession or transportation of any firearm "with altered or obliterated identification marks").[4]

Contrary to Defendant's argument that "[t]he law enforcement officer that seized the firearm from defendant said nothing that would indicate that defendant possessed a gun unlawfully (e.g., without registration)," (Dkt. No. 15 at 5), Officer Marshall stated that Defendant admitted during the encounter that he was not a registered firearm owner. This admission provided the officers with reason to believe that Defendant was not authorized by law

---

[4] Defendant's citation of *United States v. Ubiles*, 224 F.3d 213 (3d Cir. 2000)—for the proposition that "it is not a crime to possess a firearm in the Virgin Islands," *id.* at 214—is therefore inapposite. (*See* Dkt. No. 15 at 5). While it is not a crime to simply possess a firearm in the Virgin Islands, it is a crime to possess a firearm "unless authorized by law," or with an obliterated serial number. *See* 14 V.I.C. § 2253(a); 23 V.I.C. § 481(a)–(b); 18 U.S.C. § 922(k).

to possess the firearm. *See* V.I.C. § 2253(a). Therefore, Defendant's argument on this issue is unavailing.

The Court also finds that "the manner in which the stop was conducted 'was reasonably related in scope to the circumstances which justified the interference in the first place.'" *See Johnson*, 592 F.3d at 452 (quoting *Terry*, 392 U.S. at 19–20). The circumstances that justified the initial stop included the sight of the cups of marijuana on the trunk of Defendant's car and the smell of marijuana emanating from the car. During the encounter, Officer Marshall asked Defendant questions about whether he had contraband on his person or in his vehicle. He responded affirmatively, and the officers searched Defendant and his car. After discovering marijuana on Defendant's person and in his car, and after discovering an admittedly unregistered handgun with an obliterated serial number, the police officers arrested Defendant. Based on these facts, the Court finds that the officers' conduct was "reasonably related in scope" to the facts that justified the initial stop. *See id.*

In a 2010 case, *United States v. Cole*, this Court denied a defendant's motion to suppress under similar circumstances. *See Cole*, 2010 WL 724382 at *1–*3. The defendant, Vayron Cole, moved to suppress evidence discovered by police during a search of his vehicle after a traffic stop. *Id.* at *1. After stopping Cole's vehicle, the police officers in that case noticed a strong odor of marijuana, and when asked, Cole admitted that he had contraband in the car. *Id.* The officers saw a marijuana cigarette in the center console, which Cole stated was for his personal use. *Id.* The officers arrested Cole, and a search of his car revealed marijuana and more than $16,000 in cash. Cole argued that the police lacked probable cause, and that he did not consent to the search. *Id.* The Court found that the odor of marijuana provided probable cause to search the entire vehicle, and therefore concluded that the recovery of the marijuana and cash constituted a

13

constitutionally permissible search and seizure. *Id.* at *2–*3. Accordingly, the Court denied Cole's motion to suppress. *Id.* at *3.

Here, as in *Cole*, the smell of marijuana provided the officers probable cause to search Defendant's entire vehicle. The recovery of the marijuana from Defendant's person and his car, and the recovery of the handgun, constituted a constitutionally permissible search and seizure. Therefore, the evidence seized should not be suppressed, and Defendant's Motion must be denied with respect to his challenge under the Fourth Amendment.

### 2.    Fifth Amendment Challenge

Defendant's Motion also raises a Fifth Amendment challenge. (*See* Dkt. No. 14 at 1 (moving "to suppress the evidence illegally seized on the grounds that it was seized in violation of [Defendant's] Fourth *and Fifth Amendment[]* rights") (emphasis added)). However, neither in the Motion nor in the accompanying Memorandum of Law in support thereof does Defendant articulate the factual and legal basis for his Fifth Amendment challenge. (*See id.*; Dkt. No. 15). Similarly, Defendant failed to address any argument based on the Fifth Amendment at the suppression hearing held on July 9, 2013.

To merit consideration by a court, parties are required to state their arguments squarely and distinctly, or such arguments will be deemed waived. *See Wolf v. Scobie*, 28 F. App'x 545, 547 (7th Cir. 2002) ("[P]erfunctory, undeveloped, and unsupported arguments are deemed waived (including arguments raising constitutional issues)."); *United States v. Zannino*, 895 F.2d 1, 17 (1st Cir. 1990) ("[A] litigant has an obligation 'to spell out its arguments squarely and distinctly,' or else forever hold its peace.") (cited cases omitted); *United States v. Valdes-de La Rosa*, Crim. No. 08–275 (FAB), 2009 WL 982624 at *1 (D.P.R. Apr. 7, 2009) (citing *Zannino*, and noting that although the *Zannino* court "couche[d] this language as part of a 'settled

14

appellate rule,' it is no less true at the trial level"). Accordingly, the Court finds that Defendant waived any argument based on the Fifth Amendment for suppression of the seized evidence. *See Zannino*, 895 F.2d at 17 ("[I]ssues adverted to in a perfunctory manner, unaccompanied by some effort at developed argumentation, are deemed waived."); *United States v. Loya*, 807 F.2d 1483, 1487 (9th Cir. 1987) ("Issues raised in a brief which are not supported by argument are deemed abandoned.").

Even assuming that Defendant's Fifth Amendment argument was not waived, the Court finds that his alleged statements during the encounter with Officer Marshall should not be suppressed under the Fifth Amendment and the principles articulated in *Miranda v. Arizona*, 384 U.S. 436 (1966), and its progeny. *See United States v. Nelson*, 483 F. App'x 677, 682–83 (3d Cir. 2012). Under *Miranda*, "a statement made by a suspect in response to custodial interrogation after he or she has elected to remain silent is inadmissible at trial." *United States v. Brownlee*, 454 F.3d 131, 146 (3d Cir. 2006). However, *Miranda*'s special procedural safeguards are only triggered by custodial interrogation. *See Rhode Island v. Innis*, 446 U.S. 291, 300 (1980) ("[T]he special procedural safeguards outlined in Miranda" are required only where a suspect is taken into custody and "subjected to interrogation."). "Any statement given freely and voluntarily without any compelling influences is, of course, admissible in evidence." *Id.* at 299–300 (quoting *Miranda*, 384 U.S. at 478).

Here, the Court finds that Defendant's statements were made before he was handcuffed and arrested, and before he was taken into custody. *See Maryland v. Shatzer*, 559 U.S. 98, 113 (2010) ("[T]he temporary and relatively nonthreatening detention involved in a traffic stop or *Terry* stop . . . does not constitute *Miranda* custody."). Therefore, Defendant's responses to the questions posed by Officer Marshall were not made while he was subject to a custodial

interrogation. *See id.* Accordingly, the Court finds that Defendant has failed to establish a Fifth Amendment violation.

### III.  CONCLUSION

For the foregoing reasons, the Court finds that the *Terry* stop, the search of Defendant and his car, the seizure of the marijuana and the firearm, and the arrest of Defendant were constitutionally permissible.

Accordingly, it is hereby

**ORDERED** that Defendant's Motion to Suppress (Dkt. Nos. 7, 14) is **DENIED.**

**SO ORDERED.**

Date:   August 27, 2013                                  _____/s/_____
                                                         WILMA A. LEWIS
                                                         Chief Judge